1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Desniege D. Joseph, a single person,    )    No. CV-08-1478-PHX-NVW
                                              )
10             Plaintiff,                      )    **ORDER**
                                              )
11   vs.                                       )
                                              )
12                                             )
     Dillard's, Inc., a Delaware corporation) )    [Not For Publication]
13   doing business in the State of Arizona;)
     City of Phoenix, a political subdivision of)
14   the State of Arizona; Phoenix Police )
     Department; Jack Harris, Police Chief for)
15   Phoenix Police Department; Michael )
     Villarreal, individually and in his official)
16   capacity as a Phoenix Police Department )
     Officer; Jane Doe Villarreal; John Does I-)
17   V; Black Corporations I-V,               )
                                              )
18                                             )
               Defendants.                     )
19   ─────────────────────────────────────── )

20        Plaintiff Desniege D. Joseph has asserted against Defendants various federal and

21   state law claims arising from a July 19, 2007, incident during which Plaintiff was arrested

22   at a Dillard's store in Phoenix, Arizona.  Her federal claims include violations of 42

23   U.S.C. § 1983 and 42 U.S.C. § 1981, and her state claims include false arrest and/or

24   imprisonment, assault, battery, excessive force, negligence, intentional infliction of

25   emotional distress, negligent infliction of emotional distress, instigating/participating in

26   false arrest/imprisonment, and defamation per se.

27        Now pending before the Court is Defendant Dillard's Motion for Summary

28   Judgment (doc. # 111) on all claims, Plaintiff's Response (doc. # 125), and Defendant

Dillard's Reply (doc. # 135). Also pending before the Court is Defendants City of Phoenix, Phoenix Police Department, Jack Harris, and Michael Villarreal's Motion for Summary Judgment (doc. # 122) on all claims, Plaintiff's Response (doc. # 129), and Defendants' Reply (doc. # 133). For the following reasons, both motions are granted in part and denied in part.

## I.    Legal Standard for Summary Judgment

### A.    General Standard

The Court should grant summary judgment if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at

1   1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574
2   (9th Cir. 1990).

3          When the moving party has carried its burden under Rule 56(c), the nonmoving
4   party must produce evidence to support its claim or defense by more than simply showing
5   "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*
6   *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole,
7   could not lead a rational trier of fact to find for the nonmoving party, there is no genuine
8   issue of material fact for trial. *Id.* In the context of summary judgment, the court
9   presumes the nonmoving party's evidence is true and draws all inferences from the
10  evidence in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of*
11  *North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces
12  direct evidence of a genuine issue of fact, the court does not weigh such evidence against
13  the moving party's conflicting evidence, but rather submits the issue to the trier of fact for
14  resolution. *Id.*

15          **B.      Exclusion of Certain Statements of Fact**

16          In determining whether a genuine issue of material fact exists, this Court
17  disregards and does not rely upon the separate statement of facts accompanying each of
18  Defendants' replies. While LRCiv 56.1(d) permits the moving party to file a "reply
19  memorandum," it does not permit the moving party to file a separate statement of facts
20  responding to the nonmoving party's separate statement of facts. Any evidentiary
21  objections to the nonmoving party's separate statement may be included in the reply
22  memorandum, but may not be made in a separate statement of facts. Therefore,
23  Defendants City of Phoenix, Phoenix Police Department, Jack Harris, and Michael
24  Villarreal's Response to Plaintiff's Statement of Facts and Supplemental Statement of
25  Facts in Support of Defendants' Motion for Summary Judgment (doc. # 134) and
26  Defendant Dillard's Controverting Statement of Facts and Objections and Responses to
27  Plaintiff's Controverting Statement of Facts (doc. # 136) are disregarded.

28

Certain of Plaintiff's statements of fact are similarly disregarded for failing to comply with local court rules. In disputing any of the moving party's statements of fact, the nonmoving party is required to cite the specific admissible portion of the record supporting the nonmoving party's position. LRCiv 56.1(b). Similarly, any additional facts set forth by the nonmoving party must refer to a specific admissible portion of the record where the fact finds support. *Id.* Courts are not required to "comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Failure to cite the page and line numbers when referring to a deposition transcript "alone warrants exclusion of the evidence." *Orr v. Bank of Am.*, 285 F.3d 764, 774-75 (9th Cir. 2002). A district court has similar discretion to exclude evidence in an affidavit if a party fails to cite specific paragraph numbers. *Id.* at 775 n.14.

In her Statement of Facts in Support of Response to Dillard's Motion for Summary Judgment and Controverting Statement of Facts (doc. # 126), Plaintiff has failed to cite specific page and line numbers when referring to deposition transcripts and has failed to cite specific paragraph numbers when referring to her seven-page affidavit. Because the affidavit is relatively short and does not impose a significant burden on the Court's time, the statements of fact that refer to the affidavit will not be excluded. However, the Court declines to scour pages of deposition transcripts on the Plaintiff's behalf. Therefore, paragraphs 14, 17, 18, 22, 28, 29, 30, 32, and 55 of the additional facts in Plaintiff's Statement of Facts in Support of Response to Dillard's Motion for Summary Judgment and Controverting Statement of Facts (doc. # 126) are disregarded for purposes of summary judgment.

## II.    Facts

On January 15, 2007, Plaintiff, an African-American woman, purchased a pair of Armani Exchange sunglasses from the Dillard's store at Arrowhead Towne Center Mall in Glendale, Arizona. In April 2007, Plaintiff successfully exchanged the sunglasses at the Arrowhead Dillard's even though she did not have a receipt. Because the sunglasses

had since cracked, on July 19, 2007, Plaintiff went to the Dillard's store at Metrocenter Mall in Phoenix, Arizona to exchange them again. There, she was initially assisted by Joaquin Andrade, a Dillard's sales associate. Because Plaintiff did not have a receipt or other proof that she had purchased the sunglasses from Dillard's, Mr. Andrade informed Plaintiff that he would not be able to exchange the sunglasses. When Plaintiff told Mr. Andrade that she had purchased the sunglasses with her Dillard's credit card and that he could verify the purchase by looking at her account, Mr. Andrade explained that he would not be able to do that and that Plaintiff would have to return to the Arrowhead location to make the exchange or obtain a refund.

At that point, Plaintiff demanded to speak to a manager. Mr. Andrade therefore called Christopher Hardage, the manager on duty. After Plaintiff explained the situation to Mr. Hardage, he reiterated that she could not exchange the sunglasses without proof of purchase and suggested that she return to the Arrowhead location to make the exchange. What transpired next is the subject of much dispute between the parties. Defendant Dillard's alleges that Plaintiff called Hardage a "stupid white boy" and generally became irate, disruptive, and verbally abusive. Plaintiff admits that she was irate and that she raised her voice, but denies calling Hardage a "stupid white boy" and denies that she was verbally abusive.

What is undisputed, however, is that Hardage eventually threatened to call security if Plaintiff refused to leave the store voluntarily. Presumably after Plaintiff refused to comply, Hardage called security and requested the assistance of Officer Michael Villarreal, who has been employed by the City of Phoenix as a Phoenix police officer since 1988 and by Dillard's as an off-duty security guard for approximately ten years. Villarreal's duties as a security guard include walking the store, deterring shoplifting via officer presence, and assisting the store's camera operators. When Villarreal was hired by Dillard's, he was required to sign Dillard's "Rules and Procedures for Security Personnel," which includes rules and standards "to be met in apprehending suspected shoplifters." Among other things, the rules outline investigation procedures "necessary to

determine whether to release or arrest a suspect," and direct security guards not to use handcuffs "unless the suspect poses a threat to customers or our own personnel." Prior to July 19, 2007, the Phoenix Police Department had received two complaints that Villarreal had used excessive force, but both were determined to be unfounded after the department conducted an investigation.

When Villarreal approached Plaintiff, he was in his full police uniform. Because he had heard a female speaking to Hardage in a "high excitable voice," he asked what was going on. After Plaintiff again explained the situation, Villarreal asked Hardage what he wanted him to do. Hardage explained that Plaintiff was screaming and yelling at him and that he wanted Plaintiff to leave the store. Villarreal therefore advised Plaintiff that if she did not leave, he would arrest her for trespassing.

Again, what transpired next is disputed. Defendants allege that Plaintiff began to curse and yell as she moved toward the exit with Villarreal following behind. Plaintiff admits saying "f**k you" to Villareal once, but denies that she was generally cursing and yelling and maintains that while Villarreal was following her to the exit, he made "repeated, inappropriate and offensive comments of a racial and sexual nature," including a comment that "he wouldn't touch [her] black ass with a 10-foot pole." It is undisputed that at some point, Plaintiff dropped her sunglasses on the floor. Defendants allege that as Plaintiff stood up, she "turned and made a fist and went back in a punching motion," as if to strike Villarreal. Plaintiff, who is 5'3" in height and weighed 137 pounds at the time, denies making any such gesture, maintaining that she merely turned toward Villarreal to ask him why she was being treated so poorly. It is undisputed that as Plaintiff rose and turned toward Villarreal, he took her to the floor in a take-down maneuver. The parties again dispute what occurred next. Plaintiff alleges that when she raised her head to avoid the cold, dirty floor, Villarreal repeatedly slammed her head to the ground. Defendants allege that Villarreal forced her head toward the ground in a reasonable manner because she was resisting arrest and Villarreal feared that she would head-butt him.

Villarreal eventually handcuffed Plaintiff and lifted her off the ground. When she asked why she was being arrested, Villarreal told her she had assaulted him. He then escorted her to a security office on the second floor of Dillard's. There, several police officers questioned witnesses and reviewed the surveillance tape that had captured the incident. A police report was prepared that same day. After reviewing the tape and conducting an investigation, Sergeant Lane of the Phoenix Police Department decided that there was sufficient probable cause to charge Plaintiff with aggravated assault on a police officer, trespassing, and resisting arrest. She was charged with all three offenses, but a grand jury returned an indictment only on the resisting arrest charge, which was eventually dropped. Plaintiff spent the night of July 19, 2007, in jail at the Cactus Park Precinct and was released from custody the next day.

Once released, Plaintiff sought medical attention for a headache, dizziness, and weakness at an Advanced Urgent Care, where she was advised to seek a CT scan. She therefore went to Phoenix Baptist Hospital, where a CT scan revealed an arachnoid cyst on her brain that was of "no clinical significance." Dr. Steven Galasky, Plaintiff's treating physician at Phoenix Baptist, concluded that the cyst did not result from Plaintiff hitting her head the day before. A few days later, Plaintiff followed up with her primary care physician, Dr. Haihong Zhao, because she continued to suffer a headache. Unable to make any diagnoses regarding the cyst, Dr. Zhao referred Plaintiff to Dr. Jody Reiser, a neurologist. When Plaintiff visited Dr. Reiser on August 10, 2007, she complained for the first time of vomiting and nausea. After an examination, Dr. Reiser could not conclude "with a reasonable degree of medical certainty" that the cyst was caused by trauma to the head. Plaintiff has incurred medical expenses and has lost approximately $445 in income from missing work the day after the incident and for subsequent court appearances. She lost her appetite the day she was released from custody, and experienced sleeplessness for a week after the incident, but she has not experienced any

severe emotional distress.[1]  Plaintiff has not attempted to shop at Dillard's since the incident.

**III.    Analysis**

Defendants have collectively raised certain defendant-specific challenges to all or almost all claims in addition to their claim-specific challenges.  Because the defendant-specific challenges are dispositive of all or almost all claims asserted against those Defendants, they are addressed first.

**A.    Defendant-Specific Challenges to All Claims**

**1.    Phoenix Police Department is a non-jural entity.**

Defendant Phoenix Police Department seeks summary judgment in its favor on all claims because it is a non-jural entity that is incapable of being sued in its own name.  Plaintiff has neither responded to this argument nor provided any legal authority indicating that Phoenix Police Department is a jural entity.  According to Fed. R. Civ. P. 17(b), the capacity of an entity other than an individual or corporation to sue or be sued is governed by "the law of the state in which the district court is held . . . ."  Therefore, Arizona law determines the Phoenix Police Department's capacity to be sued in this case.

In Arizona, a government entity may be sued only if the legislature has given that entity the power to be sued.  *See Schwartz v. Superior Court*, 186 Ariz. 617, 619, 925 P.2d 1068, 1070 (Ct. App. 1996); *see also* 56 AM. JUR. 2D *Municipal Corporations, Counties, Other Political Subdivisions* § 787 ("[D]epartments and subordinate entities of . . . municipalities . . . that are not separate legal entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority.").  There appears to be no statute conferring on the Phoenix Police Department the right to sue and be sued.  Furthermore, Rule 17(d) of the Arizona Rules of Civil Procedure states that "[a]ctions

_____

[1] In her affidavit, Plaintiff claims that she "continues to suffer emotionally, and to suffer a loss of enjoyment of her life."  However, in her deposition, she admits that she has not suffered any severe emotional distress in the last five years and she has produced no other evidence of severe emotional distress.

brought by or against a county or incorporated city or town shall be in its corporate name." Because the Phoenix Police Department is a department of the City of Phoenix, and because actions against the City of Phoenix must be brought in the city's corporate name, the proper defendant is the City of Phoenix, not the Phoenix Police Department. *See Williams v. City of Mesa Police Dep't*, No. 09-1511, 2009 WL 2568640, at *3, 2009 U.S. Dist. LEXIS 80391, at *8 (D. Ariz. Aug. 18, 2009) (dismissing the Mesa Police Department as a non-jural subdivision of the City of Mesa); *Flores v. Maricopa* County, No. 09-0945, 2009 WL 2169159, at *2, 2009 U.S. Dist. LEXIS 61713, at *5-6 (D. Ariz. July 17, 2009) (dismissing the Phoenix Police Department as a non-jural subdivision of the City of Phoenix); *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 886 (D. Ariz. 2008) (dismissing the Phoenix Police Department as a non-jural subdivision of the City of Phoenix). Therefore, summary judgment in favor of the Phoenix Police Department on all claims is granted.

### 2. Officer Villarreal is not immune from all claims as a matter of law.

Defendant Villarreal argues that he is entitled to qualified immunity from Plaintiff's 42 U.S.C. § 1983 claim and that he is immune from civil liability for Plaintiff's state law claims under A.R.S. § 13-409.

### a. Officer Villarreal is not entitled to qualified immunity from the 42 U.S.C. § 1983 claim as a matter of law.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine recognizes "that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations . . . ." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). A determination of qualified immunity involves two inquiries. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808 (2009). The threshold question is, "[t]aken in the light most favorable to the party asserting the

injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If no constitutional right was violated, the inquiry ends, but if a right was violated, the second inquiry is "whether the right was clearly established" at the time the officer violated it. *Id.* This second inquiry is whether "a reasonable official would understand that what he [did] violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The "unlawfulness must be apparent" in light of pre-existing law. *Id.* If the answer to either of the two inquiries is negative, the official is entitled to qualified immunity.

Under *Saucier*, the sequence of two inquiries was inflexible. Recently, however, the Supreme Court decided that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 129 S. Ct. at 818; *see also Mueller*, 576 F.3d at 993. Rather, courts should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818. Starting with the first prong in this case, the inquiry is whether Villarreal violated any of Plaintiff's constitutional rights as viewed in a light most favorable to Plaintiff. Although somewhat unclear, Plaintiff appears to be arguing that Villarreal violated her Fourth Amendments rights to be free from unreasonable seizures and excessive force.

### i.    Unreasonable Seizure

To the extent the claim is based on an unreasonable seizure, Villarreal is entitled to qualified immunity as a matter of law. A person has been "seized" for Fourth Amendment purposes only if a reasonable person in the same circumstances would not feel free to leave or to "disregard the police and go about his business." *California v. Hodari*, 499 U.S. 621, 628 (1991); *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Fisher v. City of San Jose*, 558 F.3d 1069, 1078 (9th Cir. 2009). In her response to Villarreal's motion for summary judgment, Plaintiff argues only that Villarreal unlawfully seized her when he demanded that she leave the store or be arrested for trespassing. Characterizing an order to leave the premises as a seizure appears

entirely inconsistent with the traditional notion that a seizure occurs only when a reasonable person would not feel free to leave. However, it is not entirely inconsistent with the more recent refinement that a person is seized when a reasonable person in the same situation would not feel free to disregard the police and go about his business.

Whether Villarreal effectively "seized" Plaintiff by ordering her to leave Dillard's need not be decided, because Villarreal is entitled to qualified immunity under the second prong of the analysis. While the general right to be free from unreasonable seizures is clearly established, the more fundamental issue of whether an order to leave constitutes a seizure is not clearly established. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1181 (7th Cir. 1994) (concluding that, regardless of whether a police officer's order to move off the premises was a seizure, the officer was entitled to qualified immunity because the law governing that precise issue was unclear); *see also United States v. Ojeda-Ramos*, 455 F.3d 1178, 1184 (10th Cir. 2006) (deciding that an officer's order to leave a bus and claim luggage was not a seizure because the officer "required the passengers to leave the bus, not remain on it."). If it is unclear whether an order to leave constitutes a seizure as a matter of law, a reasonable officer would not necessarily believe or understand that an order for a person to leave may have violated that person's right to be free from unreasonable seizures.

## ii.     Excessive Force

To the extent Plaintiff's section 1983 claim is based on the use of excessive force, Villarreal is not entitled to qualified immunity as a matter of law. Under the Fourth Amendment, officers may only use force that is "'objectively reasonable' in light of the facts and circumstances . . . ." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Johnson v. County of Los Angeles*, 340 F.3d 787, 792 (9th Cir. 2003). "Not every push or shove . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396. The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* In determining whether the use of force was reasonable, some of the facts and circumstances

to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

Viewing the circumstances in a light most favorable to Plaintiff, it cannot be said as a matter of law that Villarreal did not violate Plaintiff's right to be free from excessive force. It is undisputed that Plaintiff had been moving toward the exit of Dillard's moments before Villarreal restrained her, that she was not armed, and that she was about 5'3" in height and weighed about 137 pounds at the time. Whether or not Plaintiff attempted to assault Villarreal with her fist is hotly disputed. There is also a dispute about whether Plaintiff was resisting arrest when Villarreal forced her head toward the ground and how much force he used in doing so. A reasonable jury could find that Plaintiff did not attempt to assault Villarreal, that she was not resisting arrest, and that Villarreal's use of force was therefore unreasonable under the circumstances.

As for the second prong of the qualified immunity analysis, the right to be free from excessive force and the general principle that "force is only justified when there is a need for force" have been clearly established for some time. *Blankenhorn*, 485 F.3d at 481 ("In assessing the state of the law at the time of [defendant's] arrest, we need look no further than *Graham*'s holding . . . ."); *see also Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003). Assuming, as Plaintiff contends, that Villarreal repeatedly slammed her head against the ground even though she was not resisting arrest, these clearly established principles would have given a reasonable officer "fair notice" that his use of force might have been excessive under the circumstances. *See id.* Therefore, summary judgment in favor of Villarreal on the issue of qualified immunity from the section 1983 excessive force claim is denied.

- 12 -

### b. Officer Villarreal is not immune from civil liability for the state law claims as a matter of law.

Defendant Villarreal relies on A.R.S. § 13-409 as a basis for immunity from Plaintiff's state law claims. Section 13-409 provides:

> A person is justified in . . . using physical force against another if in making . . . an arrest or detention or in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist:
>
> 1. A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape.
>
> 2. Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained.
>
> 3. A reasonable person would believe the arrest or detention to be lawful.

In conjunction with the above provision, A.R.S. § 13-413 states that "[n]o person in this state shall be subject to civil liability for engaging in conduct otherwise justified . . . ."

Summary judgment on this issue is inappropriate for the same reason it is inappropriate on the issue of qualified immunity from the section 1983 excessive force claim. In light of the disputes over whether Plaintiff attempted to assault Villarreal and whether she was resisting arrest, it cannot be said that a "reasonable person would believe that such force [was] immediately necessary to effect the arrest" or that a "reasonable person would believe the arrest . . . to be lawful." A determination of immunity under A.R.S. § 13-409 therefore requires the resolution of genuine issues of material fact. That task is within the exclusive purview of the jury. Therefore, summary judgment in favor of Villarreal on the issue of immunity under A.R.S. § 13-409 is denied.

### 3. Dillard's is not absolved of vicarious liability for Villarreal's actions as a matter of law.

Plaintiff alleges that Dillard's, as Villarreal's private employer, is liable for false imprisonment, assault, battery, and a number of the other state law claims under a theory of vicarious liability. Dillard's now argues that it cannot be vicariously liable for Villarreal's actions because Villarreal was acting in his capacity as a police officer and

not as a security guard when he took Plaintiff to the ground and arrested her. In the alternative, Dillard's argues that no vicarious liability attaches because Villarreal was acting outside the scope of his employment as a security guard at that time.

Arizona law is silent specifically as to whether and when a private employer may be absolved of vicarious liability for the acts of an employee who is also a police officer. Other jurisdictions have come to different conclusions under a variety of analytical frameworks. Under a "nature-of-the-act" approach, Texas law requires courts to "analyze the capacity in which the officer acted at the time he committed the acts for which the complaint is made." *Ali v. La Marque I.S.D. Educ. Found., Inc.*, No. H-05-2508, 2007 WL 4206326, at *3, 2007 U.S. Dist. LEXIS 87106, at *9 (S.D. Tex. Nov. 27, 2007) (quoting *Morgan v. City of Alvin*, 175 S.W.3d 408, 416 (Tex. App. 2004)); *Ogg v. Dillard's, Inc.*, 239 S.W.3d 409, 418 (Tex. App. 2007). If the officer observed a crime or was otherwise enforcing general laws, the private employer incurs no vicarious liability, even where the employer directed the officer's activities. *Ogg*, 239 S.W.3d at 418, 420. On the other hand, if the officer was "protecting the employer's property, ejecting trespassers, or enforcing rules and regulations promulgated by the employer," the trier of fact determines whether the officer was acting as a police officer or as an employee of the private employer. *Id.* District courts in both Hawaii and Indiana have applied the same framework. *See Otani v. City and County of Hawaii*, 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998) (holding that a private employer was not vicariously liable for actions taken by its employee, a police officer, in making an arrest); *Crenshaw v. Rivera*, No. 05-CV-440-PRC, 2009 WL 377985, at *9, 2009 U.S. Dist. LEXIS 10887, at *26-27 (N.D. Ind. Feb. 12, 2009) (same).

At least one other jurisdiction has rejected the "nature-of-the-act" approach in favor of traditional principles of agency law. *See White v. REVCO Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 722 (Tenn. 2000) (reasoning that unlike the "nature-of-the-act" approach, principles of agency "do not depend upon the splitting of legal hairs . . . ."). For the following reasons, this Court will do the same. First, absolving Dillard's of vicarious

liability for "police" acts, including arrests, ignores the fact that Dillard's "Rules and Procedures for Security Personnel" contemplates and even expects its security guards to perform those very acts when necessary. Second, it is unclear whether there is any practical distinction between the "nature-of-the-act" approach and the agency approach. A determination of the capacity in which the employee was acting based on the nature of the act appears to be no more than a cornerstone agency inquiry into whether the employee was acting within the scope of his or her employment. Third, the existence of vicarious liability, which is the true inquiry here, is traditionally determined under agency principles. *See Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust*, 197 Ariz. 535, 540, 5 P.3d 249, 254 (Ct. App. 2000). Finally, while Arizona law does not speak to "nature-of-the-act" approach, its agency principles are well-established and may be ascertained with relative ease. Therefore, traditional principles of Arizona agency law will govern whether Dillard's is vicariously liable for the actions that form the basis of Plaintiff's claims.

Under Arizona law, "an employer is vicariously liable only for the behavior of an employee who was acting within the course and scope of his employment." *Pruitt v. Pavelin*, 141 Ariz. 195, 205, 685 P.2d 1347, 1357 (Ct. App. 1984). An employee's conduct is within the scope of employment if "(a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master." *Transamerica Ins. Co. v. Valley Nat'l Bank*, 11 Ariz. App. 121, 125, 462 P.2d 814, 818 (1969); *see also* RESTATEMENT (SECOND) OF AGENCY § 228 (1958). Conduct that is not clearly authorized by the employer is within the scope of employment if is incidental to conduct that is authorized. *State v. Schallock*, 189 Ariz. 250, 157, 941 P.2d 1275, 1282 (1997).

Here it is undisputed that Villarreal was a Dillard's employee. The majority of Plaintiff's state law claims complain of Villarreal's actions in tackling Plaintiff to the

floor and arresting her.[2]  Therefore, the question is whether those actions were within the scope of Villarreal's employment as a security guard.  There is no doubt that Villarreal's actions took place within the temporal and geographic limits of his employment with Dillard's, because they occurred in the Dillard's store during his shift as a security guard.

Villarreal's actions were also of the type he was employed to perform.  Villarreal used physical force to restrain and arrest Plaintiff.  On the one hand, Dillard's "Rules and Procedures for Security Personnel," to which Villarreal is required to adhere as a condition of employment, clearly contemplates the use of the physical means necessary to "arrest a suspect."  On the other hand, the scope of crimes for which Dillard's security guards are authorized to make arrests is unclear.  The "Rules and Procedures for Security Personnel" address only the apprehension of shoplifters.  Moreover, Plaintiff concedes that Dillard's purpose in hiring police officers as security guards is to deter shoplifting.  Neither party maintains that Plaintiff was suspected of shoplifting and neither suggests that Villarreal restrained her for shoplifting.  Rather, Plaintiff was arrested for aggravated assault.

However, Dillard's "Rules and Procedures for Security Personnel" contemplates the possibility that security guards may need to arrest suspects to protect themselves and accordingly permits security guards to use the physical means necessary to do so.  Specifically, the rules allow security guards to use handcuffs when "the suspect poses a threat to customers or [Dillard's] own personnel."  Therefore, even assuming that Villarreal's security guard duties are limited to deterring shoplifting, a reasonable jury might find that arresting a person for alleged assault is incidental to that duty, and that

---

[2] In her response, Plaintiff characterizes Villarreal's order to leave the store as the relevant conduct forming the basis of Dillard's vicarious liability.  This argument is unavailing.  Plaintiff's claims of assault, battery, false arrest/imprisonment, excessive force, intentional infliction of emotional distress, and defamation are all premised on the actions Villarreal took in restraining and arresting her, not on his order for her to leave the store.

such conduct is therefore within the scope of employment.  As such, summary judgment in favor of Dillard's on the existence of vicarious liability is denied.

## B. Claim-Specific Challenges

### 1. 42 U.S.C. § 1983

Section 1983 provides that any person who acts under color of law to deprive another person of any "rights, privileges, or immunities secured by the Constitution and laws" will be liable to that injured person.  *See* 42 U.S.C. § 1983.  Plaintiff's claim under section 1983 alleges that Defendants violated her Fourth Amendment right to be free from excessive force and manifested deliberate indifference in their hiring, training, and supervision of Villarreal in violation of the Due Process Clause.  Defendants City of Phoenix, Jack Harris, and Dillard's move for summary judgment on various grounds.

### a. City of Phoenix

A municipality cannot be vicariously liable for the torts of its employees under section 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978).  However, a governmental entity may be directly liable under section 1983 if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."  *Id.* at 694.  To establish a section 1983 claim against Defendant City of Phoenix, Plaintiff can follow one of two paths.  First, she can show that the city directly violated her constitutional rights or directed Villarreal to do so by acting with "the state of mind required to prove the underlying violation." *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).  Alternatively, she can show that (1) Villarreal violated her constitutional rights, (2) the city had a custom, practice, or policy that amounted to deliberate indifference, and (3) the city's custom, practice, or policy was the "moving force" behind the constitutional violations.  *Id.* at 1194.  With respect to this second path, an omission, such as a failure to train and supervise police officers, can qualify as a city custom or policy, but only if it reflects a deliberate or conscious choice not to train or supervise.  *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

With respect to Plaintiff's claim that the city violated Plaintiff's Fourth Amendment right to be free from excessive force, the city argues that Plaintiff has failed to produce sufficient evidence that the city promulgated a policy promoting the use of excessive force by its officers. Plaintiff's response largely ignores this argument and fails to point to any evidence that the city follows such a policy. Therefore, regardless of which path to liability is chosen, Plaintiff has failed to satisfy it.

With respect to Plaintiff's claim that the city was deliberately indifferent in its hiring, training, and supervision of Villarreal, the claim alleges an omission. Therefore, Plaintiff must establish liability under the second path. The city argues that it is entitled to summary judgment because Plaintiff has failed to produce any evidence of a city custom or policy that amounts to deliberate indifference. The city also points to the uncontroverted expert opinion of Mr. Bennie Click, a former police officer who testified that the training provided to police officers by the Phoenix Police Department meets or exceeds nationally recognized standards.

Again, Plaintiff's response largely ignores this argument, focusing instead on the irrelevant issue of whether Villarreal was acting under color of law when he arrested and detained Plaintiff. The response points to no evidence of a city custom or policy indicating deliberate indifference in the hiring, training, or supervision of its police officers. In fact, Plaintiff admits that the training provided to police officers by the Phoenix Police Department meets or exceeds nationally recognized standards. The only relevant evidence that Plaintiff points to in addressing other claims is that the city received two complaints of Villarreal's use of excessive force before the incident involving Plaintiff. This evidence is insufficient for two reasons. First, even assuming the complaints are evidence of inadequate training or supervision, such evidence with respect to only one officer is not enough to establish a city policy or custom. *See Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994). Second, there is no evidence that the inadequacy is the result of the city's deliberate and conscious choice not to supervise, especially in light of the fact that the city investigated

both complaints and determined them to be unfounded. *See id.* Therefore, summary judgment in favor of Defendant City of Phoenix on the section 1983 claim is granted.

### b. Jack Harris

An individual municipal official may be sued in his or her official capacity, individual capacity, or both. On the one hand, a claim against an individual in an official capacity is nothing more than a claim against the municipal entity of which the individual is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Therefore, when a plaintiff has asserted a claim against a person in his or her official capacity in addition to a claim against the municipal entity of which the person is an agent, the claim against the individual person is redundant and may be dismissed. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). On the other hand, because section 1983 does not impose vicarious liability, when asserting a claim against an individual in his or her individual capacity, a plaintiff is required to prove that the individual personally participated in the deprivation of the plaintiff's constitutional rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here it appears that Plaintiff sued Jack Harris only in his official capacity. In the caption of the Complaint (doc. # 1), he was named only as police chief for the Phoenix Police Department. Because Plaintiff has sued Harris in his official capacity in addition to suing Defendant City of Phoenix, of which Harris is an agent, the claim against Harris is duplicative and unnecessary. To the extent Plaintiff has sued Harris in his individual capacity, Plaintiff has not produced any evidence of Harris' personal participation in Plaintiff's arrest and detention or in the hiring, training, or supervision of Villarreal. Therefore, summary judgment is granted in favor of Jack Harris as to all claims.

### c. Dillard's

An entity cannot be vicariously liable for the torts of its employees under section 1983. *Monell*, 436 U.S. at 691-92. Therefore, to establish a section 1983 claim against Dillard's, a private entity, Plaintiff must prove that (1) Dillard's acted under color of law and (2) violated Plaintiff's constitutional rights. *See Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989); *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001). Dillard's moves for summary judgment under both prongs. With respect to the first prong, a private entity was acting under color of law only if there was such a close nexus between the entity's conduct and state conduct "'that seemingly private behavior may be fairly treated as that of the State itself.'" *Id.* at 747-48 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). This inquiry is "highly circumstantial and far from precise," especially in the context of off-duty police officers acting as security guards for a private entity. *Id.* at 748. While the Ninth Circuit appears not to have addressed this specific context, the Fifth Circuit has decided that a private employer of an off-duty police officer does not act under color of law unless the officer "failed to perform an independent investigation, and that evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report." *Id.* at 750.

Plaintiff utterly failed to address this argument in her response. However, the issue may be resolved on the facts and evidence already presented. Plaintiff's section 1983 claim is predicated on Villarreal's actions in taking her to the floor and arresting her for alleged assault.[3] Therefore, the question is whether Villarreal, an undisputed state actor, performed an independent investigation before arresting Plaintiff for assault. The undisputed facts indicate that he did. No Dillard's employees directed or requested

---

[3] It is undisputed that although Plaintiff was eventually charged with aggravated assault, resisting arrest, and trespassing, she was initially arrested only for assault.

Villarreal to arrest Plaintiff for assault.  In fact, at no point did any Dillard's employees direct or request Villarreal to investigate or arrest Plaintiff for any crime.  The extent of Dillard's involvement in the incident was to inform Villarreal that it wanted Plaintiff to leave the store.  Only when Plaintiff was moving toward the exit did Villarreal lunge at and arrest her for alleged assault.  Villarreal independently observed Plaintiff's actions and the Phoenix Police Department prepared its own police report after the incident.  Because the state conducted its own investigation, Dillard's was not acting under color of law during the incident.

With respect to the second prong, to subject Dillard's to liability under section 1983, Plaintiff must show that Dillard's promulgated and followed a policy or custom that caused Plaintiff's constitutional rights to be violated.  *See Austin v. Paramoun*t *Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993).  Again, Plaintiff entirely failed to address this argument and has not pointed to any admissible evidence of a Dillard's policy or custom promoting the use of excessive force or allowing for inadequate training and supervision of its security guards.  As mentioned, even assuming that the two complaints of excessive force against Villarreal are evidence of inadequate training or supervision, such evidence with respect to only one employee is not enough to establish a policy or custom.  *See Alexander*, 29 F.3d at 1367.  Therefore, summary judgment in Defendant Dillard's favor is granted on both grounds.

## 2.    42 U.S.C. § 1981

Title 42, section 1981 of the United States Code provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  The right is protected from governmental as well as nongovernmental discrimination.  *Id.* § 1981(c).  Defendants move for summary judgment on different grounds.

### a. City of Phoenix

A state entity cannot be vicariously liable under section 1981 for the acts of its employees. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (affirming that this rule, initially announced in *Jett v. Dallas Sch. Dist.*, 491 U.S. 701 (1989), is still good law). Therefore, to establish a section 1981 claim against Defendant City of Phoenix, Plaintiff must prove that the city violated her right to make and enforce contracts and that the violation was caused by a "custom or policy within the meaning of *Monell* and subsequent cases." *Jett*, 491 U.S. at 735-36.

Defendant City of Phoenix moves for summary judgment on the ground that Plaintiff has failed to produce any evidence of a city custom or policy that promotes violations of the section 1981 right to make and enforce contracts. Plaintiff has failed to respond to this argument and has pointed to no evidence of an official custom or policy. Therefore, summary judgment in favor of Defendant City of Phoenix on the section 1981 claim is granted.

### b. All Other Defendants

To establish a claim against Defendants under section 1981, Plaintiff must show that (1) she is a member of a racial minority, (2) Defendants intended to discriminate against her on the basis of her race, (3) she was engaged in an activity protected under the statute, and (4) Defendants interfered with that activity. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006); *see also Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009); *Morris*, 277 F.3d at 751.

In this case it is undisputed that Plaintiff, who is African-American, is a member of a racial minority. All Defendants argue, however, that Plaintiff has failed to produce evidence of the other three elements. As to the third and fourth elements, Plaintiff argues that by attempting to exchange her sunglasses on July 19, 2007, she was attempting to make or enforce a contract with Dillard's, and that Dillard's employees thwarted that attempt by refusing to make the exchange and asking her to leave. She also alleges that

Dillard's has interfered with that right since July 19, 2007, but admits that she has not attempted to shop at Dillard's since the incident.

Making or enforcing a contract is certainly within the class of activities protected by section 1981, but in the retail context, a plaintiff must allege more than "the mere possibility that a retail merchant would interfere with a customer's attempt to contract in the future." *Morris*, 277 F.3d at 752. Therefore, Plaintiff's allegations that Dillard's interfered with her right to use her Dillard's credit card after the incident are insufficient, because Dillard's has not actually thwarted any of Plaintiff's attempts to shop there since July 19, 2007. However, an attempt to purchase items held out for sale qualifies as an actual attempt to contract with the retailer. *See Green v. Dillard's, Inc.*, 483 F.3d 533, 538 (8th Cir. 2007). Because exchanges are much like purchases, and in light of the fact that Plaintiff successfully exchanged her sunglasses at the Arrowhead Dillard's without a receipt on a prior occasion, her attempt to exchange the sunglasses on July 19, 2007, qualifies as an actual attempt to contract. Furthermore, Dillard's refusal to exchange the sunglasses on July 19, 2007, is sufficient to establish interference, because "where a customer has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been willing to recognize a § 1981 claim." *Id.*; *see also Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 874 (6th Cir. 2001).

The second inquiry, whether Defendants intended to discriminate on the basis of race, is a closer question. This issue boils down to the sufficiency of Plaintiff's evidence and whether a reasonable jury could find that racial animus drove Defendants' actions. Defendants point out that Plaintiff herself does not believe that any of Defendants' actions were motivated by racial animus.[4] Though this admission is not necessarily

---

[4] Plaintiff maintains in her affidavit that she believes the actions of Officer Villarreal and Dillard's employees were motivated by racial animus. However, this assertion directly contradicts her deposition testimony that she does not believe that any actions were taken on account of her race. In the Ninth Circuit, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony" if the district court determines that the contradiction "was actually a 'sham'." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266

dispositive of whether Defendants in fact intended to discriminate on the basis of Plaintiff's race, Plaintiff has not produced other evidence of Defendants' racial animus in refusing to exchange the sunglasses. In her affidavit, she claims that while Villarreal was following her to the exit of Dillard's, he made "repeated, inappropriate and offensive comments of a racial and sexual nature," including a comment that "he wouldn't touch [her] black ass with a 10-foot pole." But this was after, and unrelated to, the refusal to exchange the sunglasses. Plaintiff has not produced any evidence that the refusal to exchange the sunglasses was motivated by racial animus. Therefore, summary judgment will be granted in favor of all Defendants on the section 1981 claim.

### 3. False Arrest/Imprisonment

To establish a claim of false arrest or false imprisonment in Arizona, Plaintiff must show that she was detained "without [her] consent and without lawful authority." *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975) (citing *Swetnam v. F.W. Woolworth Co.*, 83 Ariz. 189, 318 P.2d 364 (1957)). The essential element of the claim is unlawful detention. *Id.* Because detention based on probable cause is lawful, the existence of probable cause is an absolute defense to a claim of false arrest or false imprisonment. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (citing *Hockett v. City of Tucson*, 139 Ariz. 317, 320, 678 P.2d 502, 505 (Ct. App. 1983)). "Probable cause exists when, 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed." *Id.* (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). "Where there is no factual dispute, probable cause is always a question of law for the court." *Hansen v. Garcia*, 148 Ariz. 205, 207, 713 P.2d 1263, 1265 (Ct. App. 1985).

Defendants argue that Villarreal cannot be liable for false arrest or false imprisonment because he had probable cause to arrest Plaintiff for aggravated assault.

---

(9th Cir. 1991). Here, the assertion in the affidavit is a sham assertion, because there is nothing to suggest that Plaintiff was confused at the deposition or that any new facts have since come to light that would change her belief.

The facts and circumstances known to Villarreal at the time he arrested Plaintiff, however, are in dispute. While Defendants allege that Plaintiff attempted to strike Villarreal, Plaintiff denies the same, maintaining that she merely turned toward Villarreal to ask him a question. Where the facts material to a probable cause inquiry are in dispute, the issue is properly for the jury. Therefore, summary judgment on this claim is denied as to all Defendants.

### 4.    Instigating False Arrest/Imprisonment

Claims of false arrest or imprisonment in Arizona are governed by the Restatement. *See Deadman v. Valley Nat'l Bank of Ariz.*, 154 Ariz. 452, 457, 743 P.2d 961, 966 (Ct. App. 1987). "One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." RESTATEMENT (SECOND) OF TORTS § 45A (1965). Instigation includes "words or acts which direct, request, invite or encourage the false imprisonment itself." *Id.* § 45A cmt. c. Where a defendant did not "expressly request the detention," he is not liable for instigating false arrest "so long as his actions were reasonable in light of the facts then known or readily available to him." *Deadman*, 154 Ariz. at 461, 743 P.2d at 970 (deciding that whether a bank instigated false arrest by reporting a suspected forgery to the arresting officer was a question for the jury).

Plaintiff was arrested for assault. Assuming, solely for purposes of this claim, that the arrest was unlawful, the question is whether Dillard's, through its employees, instigated that false arrest. Dillard's argues that Plaintiff has failed to produce any evidence that Dillard's directed, requested, or encouraged Villarreal to arrest Plaintiff for assault. Plaintiff's response is devoid of any answer to this argument, and in fact entirely fails to address the instigation claim. The undisputed facts and evidence already before the Court indicate that Mr. Hardage, a Dillard's manager, called Villarreal to the scene. When Villarreal asked Mr. Hardage what he wanted him to do, Hardage merely explained that he wanted Plaintiff to leave the store. He did not direct or request that Villarreal arrest Plaintiff for any crime. Hardage's explanation that he wanted Plaintiff to leave

could be construed as encouragement for Villarreal to arrest Plaintiff, but only for trespassing. There is nothing in the record that reflects direction or encouragement for Villarreal to arrest Plaintiff for the crime of assault. Therefore, summary judgment in favor of Dillard's on the instigation claim is granted.

### 5. Assault/Battery

Defendant Dillard's moves for summary judgment on the assault and battery claims on the basis that Plaintiff has produced no evidence that Villarreal intended to harm or offensively touch her, thereby absolving Dillard's of vicarious liability. Dillard's also argues in the alternative that Villarreal was justifiably acting in self-defense under A.R.S. § 13-404(A). Defendant City of Phoenix, on the other hand, argues that it is immune under A.R.S. § 820.05(B) from vicarious liability for the assault and battery claims.

#### a. Dillard's/Villarreal

To establish the tort of assault in Arizona, Plaintiff must prove that Villarreal acted with intent to cause a harmful or offensive contact or imminent apprehension thereof. *Garcia v. United States*, 826 F.2d 806, 809 n.9 (9th Cir. 1987) (citing RESTATEMENT (SECOND) OF TORTS § 21 (1965)). Similarly, to establish the tort of battery, Plaintiff must show that Villarreal "intentionally caused a harmful or offensive contact" with Plaintiff's person. *Johnson v. Pankratz*, 196 Ariz. 621, 623, 2 P.3d 1266, 1268 (Ct. App. 2000) (citing RESTATEMENT (SECOND) OF TORTS § 13 (1965)). Contact is offensive if it "offends a reasonable sense of personal dignity." RESTATEMENT (SECOND) OF TORTS § 19 (1965).

Dillard's argues that Plaintiff has produced no evidence of Villarreal's intent to cause harm or imminent apprehension thereof. Plaintiff's response merely reiterates her allegations and fails to refer to admissible evidence of Villarreal's intent. However, the undisputed facts already before the Court show that Villarreal intentionally lunged at Plaintiff in a take-down maneuver and forced her head to the ground. A reasonable jury

- 26 -

might infer from these facts that Villarreal intended to harm or touch Plaintiff without her permission.

Summary judgment based on Dillard's alternative argument, namely self-defense, is also inappropriate. Under A.R.S. § 13-404(A), "a person is justified in threatening or using physical force against another . . . to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use . . . of unlawful physical force." Pursuant to A.R.S. § 13-413, "[n]o person in this state shall be subject to civil liability for engaging in conduct otherwise justified . . . ." As was explained in denying Villarreal federal and state immunity, whether Villarreal's use of physical force was immediately necessary to protect himself turns on the resolution of several genuine issues of fact, including whether Plaintiff attempted to strike him and whether she was attempting to head-butt him when she was on the floor. Because genuine issues of fact are for the jury to resolve, summary judgment on the assault claim is denied as to Dillard's.

### b.    City of Phoenix

According to A.R.S. § 12-820.05(B), "[a] public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." Relying on this provision, Defendant City of Phoenix argues that if Villarreal, its employee, is found to have assaulted Plaintiff, the city cannot be liable because it had no knowledge of Villarreal's propensity for assault. However, the city's argument does not address the statutory prerequisite that Villarreal's actions constitute a felony. Therefore, summary judgment is denied.

### 6.    Excessive Force

Defendant Dillard's argues that Plaintiff's independent excessive force claim should be dismissed because Arizona does not recognize the tort of excessive force. Instead of addressing this argument, Plaintiff's response merely reiterates her allegations of unreasonable force. Nevertheless, the issue is one of law that may properly be

resolved without regard to disputed factual issues. Contrary to Dillard's contention, "Arizona courts have long recognized that a defendant has a duty to act reasonably in response to criminal conduct and that unreasonable, excessive use of force may result in liability." *Sonoran Desert Investigations, Inc. v. Miller*, 213 Ariz. 274, 280, 141 P.3d 754, 760 (Ct. App. 2006). Therefore, "[a]n injured party may bring an action for damages arising out of allegedly unwarranted or excessive force . . . ." *Id.* at 281, 141 P.3d at 761.

In the alternative, Dillard's, relying on the testimony of a former police officer, Bennie Click, argues that summary judgment on the claim is warranted because Villarreal's use of force was reasonable under the circumstances. Although Plaintiff does not dispute that in Bennie Click's opinion, Villarreal used reasonable force, she has not conceded that Villarreal used reasonable force as a matter of fact. A determination of excessive force turns on the facts and circumstances surrounding the use of force. As was discussed in denying summary judgment on the qualified immunity defense, Dillard's has failed to demonstrate the absence of genuine issues of material fact weighing on a determination of excessive force. Therefore, summary judgment on this claim is denied.

### 7.     Negligent Hiring and Supervision

Arizona follows the Restatement with regard to negligent hiring and supervision. *See Kassman v. Busfield Enters.*, 131 Ariz. 163, 166, 639 P.2d 353, 356 (Ct. App. 1981) (citing RESTATEMENT (SECOND) AGENCY § 213). An employer is liable for the tortious conduct of its employee if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee. *See* RESTATEMENT (SECOND) AGENCY § 213. In Arizona, "[f]or an employer to be liable for negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 208 Ariz. 124, 130, 91 P.3d 346, 352 (Ct. App. 2004).

Dillard's argues that it cannot be liable because Villarreal, its employee, did not commit a tort. However, as indicated throughout this order, because genuine issues of

material fact remain, whether Villarreal in fact committed several of the torts alleged is for the jury to decide. However, all Defendants also argue that Plaintiff has failed to establish that they were negligent in hiring, training, or supervising Villarreal. This argument has merit. Plaintiff's response consists largely of mere allegations, unsupported by any evidence in the record of negligent hiring, training, or supervision. First, there is no evidence bearing on Defendants' decision to hire Villarreal in the first place. Second, there is no evidence bearing on Villarreal's training. Furthermore, Plaintiff admits that the training provided to police officers by the Phoenix Police Department meets or exceeds nationally recognized standards. Finally, the only evidence Plaintiff points to in support of a claim of negligent retention or supervision are the two complaints received by the Phoenix Police Department alleging the use of excessive force by Villarreal prior to the incident in this case. This evidence is insufficient to establish negligence in light of the fact that both complaints were investigated and determined to be unfounded. Therefore, summary judgment in favor of all Defendants on the negligent hiring and supervision claim is granted.

### 8. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, Plaintiff must prove that Defendants (1) engaged in "extreme" and "outrageous" conduct, (2) intended to cause emotional distress or "recklessly disregarded the near certainty that such distress will result," and (3) actually caused Plaintiff to suffer "severe emotional distress." *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005); *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987). Defendants move for summary judgment on the basis that they did not intend to inflict emotional distress and on the basis that Plaintiff admitted in her deposition that she has not experienced any severe emotional distress in the last five years.

As to the intent issue, Villarreal's alleged impulsive and emotional actions are insufficient to form the basis of a claim for intentional infliction of emotional distress. As

to the issue of the degree of Plaintiff's emotional distress, Defendants, having satisfied their burden of producing evidence that negates an essential element of the claim, are entitled to summary judgment unless Plaintiff demonstrates that a genuine issue of material fact exists. The only rebuttal evidence Plaintiff points to is her affidavit, in which she maintains that she continues to suffer emotional distress and loss of enjoyment of life. In light of her deposition testimony, her affidavit is insufficient to establish severe emotional distress. Summary judgment in favor of all Defendants on this claim is therefore granted. This ruling is of no consequence because a claim for intentional infliction of emotional distress adds nothing to a claim of assault or battery. Plaintiff's damages will be no higher on this claim than on a claim for assault or battery.

### 9. Negligent Infliction of Emotional Distress

"Negligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Villareal v. State Dep't Of Transp.*, 160 Ariz. 474, 481, 774 P.2d 213, 220 (1989). Plaintiff did not witness an injury to a closely related person during the July 19, 2007 incident. She alleges only that she herself sustained physical injuries during her altercation with Villarreal. Therefore, all Defendants are entitled to summary judgment on this claim.

### 10. Defamation Per Se

Because Plaintiff is not a public figure, to establish defamation in Arizona she must prove that Defendants (1) knowingly, recklessly, or negligently (2) published to a third party (3) a false statement about Plaintiff (4) that defamed her character. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977) (adopting the test set forth in RESTATEMENT (SECOND) OF TORTS § 580B (1977)); *Dube v. Likins*, 216 Ariz. 406, 417, 167 P.3d 93, 104 (Ct. App. 2007). Defamatory statements "must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers,*

*Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). Defendants argue that Plaintiff has failed to indicate which statements form the basis of the claim and they point out that Plaintiff admitted in her deposition that her reputation in the community has remained the same since the incident. This evidence challenges two of the essential elements of the claim.

In her responses to both motions for summary judgment, Plaintiff failed to address Defendants' arguments with respect to the defamation claim. In fact, Plaintiff entirely failed to address the claim altogether. As a technical matter, if a nonmoving party fails to respond to a motion for summary judgment, a court may consider such silence as consent to the granting of the motion and may dispose of the motion summarily. LRCiv 7.2(i); *Brydges v. Lewis*, 18 F.3d 651, 652-53 (9th Cir. 1993) ("district court did not err by deeming [plaintiff's] failure to respond as consent to the motion for summary judgment"). However, the claim need not be adjudicated on this technical ground, because as a practical matter, by ignoring the claim, Plaintiff has failed to refer to anything in the record indicating that false statements were made or that her reputation has been harmed. Therefore, summary judgment on the defamation per se claim is granted with respect to all Defendants.

### C. Damages

Dillard's also moves for summary judgment on the ground that the claims for both compensatory and punitive damages lack evidentiary support. In light of Plaintiff's allegations that she lost income due to missing work and incurred medical expenses as a result of the incident, summary judgment as to compensatory damages is denied. As to punitive damages, because many material facts are hotly disputed at this point, it cannot be said as a matter of law that punitive damages are not warranted in this case. Depending on how the trial develops, Defendants may raise this issue later in the form of a Fed. R. Civ. P. 50 motion for judgment as a matter of law.

IT IS THEREFORE ORDERED that Defendant Dillard's Motion for Summary Judgment (doc. # 111) is granted with respect to the 42 U.S.C. § 1983 and 42 U.S.C. §

1981 claims and the state law claims for instigating false arrest, negligent hiring and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation per se. It is denied in all other respects.

IT IS FURTHER ORDERED that Defendants City of Phoenix, Phoenix Police Department, Jack Harris, and Michael Villarreal's Motion for Summary Judgment (doc. # 122) is granted in part and denied in part. With respect to Defendant Phoenix Police Department, it is granted as to all claims. With respect to Defendant City of Phoenix, the motion is granted as to the 42 U.S.C. § 1983 and 42 U.S.C. § 1981 claims and the state law claims for negligent hiring and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation per se. With respect to Defendant Jack Harris, the motion is granted as to all claims. With respect to Defendant Michael Villarreal, the motion is granted as to the 42 U.S.C. § 1983 claim, but only to the extent it alleges an unreasonable seizure, as to the 42 U.S.C. § 1981 claim, and as to the state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation per se. The motion is denied in all other respects.

DATED this 23rd day of December, 2009.

_____
Neil V. Wake
United States District Judge